IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDIL CRUZ,<br><br>Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | CIVIL NO. 11-1945 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On September 26, 2011, plaintiff Edil Cruz (hereafter plaintiff "Cruz") filed this action for judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying his application for a period of disability and ensuing disability benefits. (Docket No. 1).[1]

On May 5, 2012, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 13, and 14). By February 10, 2012, plaintiff Cruz, through his legal representative, Atty. Salvador Medina De-La-Cruz, consented to proceed before a Magistrate Judge. (Docket No. 7).[2] Thereafter, on October 15, 2012, Atty. Medina De-La-Cruz filed plaintiff's memorandum of law. (Docket No. 23). On February 4, 2012, the Commissioner filed his memorandum. (Docket No. 25).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

## BACKGROUND

On October 31, 2006, plaintiff Cruz filed an application for disability benefits for a period beginning July 30, 2002, the alleged onset date of his disability.  He remained insured for disability purposes up to December 31, 2007.  The application was denied initially and upon reconsideration, for which reason a requested administrative hearing was scheduled.   At the administrative hearing, the presiding Administrative Law Judge (hereafter "ALJ") entertained the testimony of a vocational expert.  Plaintiff Cruz was not present but was represented by counsel.  On March 15, 2010, the ALJ issued a decision finding plaintiff Cruz not disabled for he was considered able to perform alternate work.  Said administrative decision was affirmed by the Appeals Council becoming the final decision of the Commissioner as to which judicial review is herein sought.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff Cruz claims disability due to low back pain which was treated by the State Insurance Fund (hereafter "SIF").  He stopped working on onset date of alleged disability, July 30, 2002.  Plaintiff Cruz also complained of knee pain and bilateral carpal tunnel syndrome.  He received psychiatric treatment for an adjustment disorder with depressed mood and anxiety and was subsequently diagnosed with major depression, recurrent moderate.

The presiding ALJ determined that: 1) plaintiff Cruz met the insured status requirements through December 31, 2007, the date he was last insured; had not engaged in substantial activity since the date of alleged disability of July 30, 2002; and suffered from severe impairments, including cervical and lumbar discogenic disc disease, bilateral carpal

tunnel syndrome, morbid obesity, anxiety and depression.  (Docket No. 13, Trans., p. 23).

The ALJ concluded plaintiff Cruz did not have an impairment or combination thereof that

was listed in the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1.  Upon

consideration of the entire record and supporting medical evidence, the ALJ determined

plaintiff Cruz retained the residual functional capacity to perform light work, except for

occasional climb, stoop, crouch or crawl and he was to avoid concentrated exposure to

vibration and was limited to simple work.  Plaintiff Cruz could not manage funds but was

able to do simple arithmetic with general fund of knowledge and had adequate remote, past,

recent and immediate memory.  (*Id.*)  Although plaintiff Cruz could not perform his past

relevant work, which included jobs as construction worker, mechanic helper, gardener and

machine operator that were from medium to very heavy level of exertion, he could carry out

light level of exertion.  (*Id.*, p. 28).  With the additional limitations that resulted from his

occupation base being eroded to unskilled work, through the testimony of a vocational

expert, the ALJ found jobs that existed in the national economy that an individual with

plaintiff Cruz' young age, 36 years, limited education and former work experience, could

still carry out.  These other jobs included classifier, laborer and telephone clerk.  (*Id.*, p. 29).

Thus, prior to onset date of disability of July 30, 2002, there were significant

number of jobs in the national economy that Cruz could perform within his residual

functional capacity for the full range of light work. The ALJ therefore considered plaintiff

Cruz was not under disability from alleged onset date and up to the date he was last insured,

December 31, 2007.

Edil Cruz v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1945 (CVR)
Page No. 4

The ALJ's decision denying a finding of disability was affirmed by the Appeals Council.[3]  Plaintiff now seeks judicial review insofar as the period from which disability was denied, that is from onset date up to the date he was last insured, for the finding that he could perform alternate work was not supported by substantial evidence.  Plaintiff Cruz also argues the ALJ did not present proper hypothetical questions to the vocational expert, who identified available alternate jobs, by not accurately reflecting all of the limitations present. (Docket No. 23, p. 2).

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff Cruz: (1) met the non-disability requirements for a period of disability and disability insurance benefits through December 31, 2007; (2) had not engaged in substantial gainful activity since the alleged onset date of disability of July 30, 2002; (3) allegations of severe impairments or combination thereof had more than a minimal affect on the ability to perform basic work-related activities, constituting severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record, plaintiff Cruz had the residual functional capacity to perform the light type of work from onset date of disability. Considering plaintiff's residual functional capacity for light work, the ALJ determined plaintiff Cruz could not perform his previous

---

[3]  The Appeals Council has previously remanded the case to the ALJ when a finding of ability to perform medium work was initially issued.  On remand, the ALJ was to examine the residual functional capacity as to frequency of the need to alternate sitting and standing, obtain evidence from a vocational expert, not only based upon the GRID, and provide proper consideration of treating sources.  (Docket No. 13, Transcript p. 106)

Edil Cruz v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1945 (CVR)
Page No. 5

kind of work, which was of medium to very heavy level of exertion. However, through the testimony of the vocational expert at the administrative hearing, the ALJ identified jobs which were available in the national economy within the residual ability for light work which were simple and unskilled for which plaintiff was not found disabled.

## LEGAL ANALYSIS

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when he is not only unable to do his previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful

work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1ˢᵗ Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines

whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he is not able to perform other work. §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

The ALJ found in the present case that plaintiff Cruz was unable to perform his previous past relevant work as construction worker, mechanic helper, gardener and machine operator. The ALJ continued to step five and upon determining the residual functional capacity for the range of light, which logically follows also for sedentary type of work, through the testimony of a vocational expert the ALJ concluded there were jobs available in the national economy within plaintiff Cruz' residual functional capacity. These jobs were identified as light and unskilled, and further considering his young age, that is, that plaintiff Cruz was 36 years of age at time he was last insured, had high school education and was unable to communicate in English, the ALJ concluded plaintiff Cruz was not under disability. The Appeals Council thereafter affirmed.

Counsel for plaintiff Atty. Medina De-La-Cruz discussed in his memoranda several aspects of the case in regards to the medical evidence and the combination of plaintiff's

impairments.  Atty. Medina De-La-Cruz also avers the vocational expert was not presented with the full panoply of relevant hypothetical questions that accurately reflected all of plaintiff's limitations.[4]  As such, the vocational expert's testimony should not be considered substantial evidence in support of the administrative decision.

Plaintiff Cruz discusses the evidence of record in that electromyogram (hereafter "EMG")  studies identified, as far back as August 2002 and through April 2003, annular disc bulge at L4-L5 level, annular disc bulge and disc protrusion with narrowing of both neural foramina at L5-S1 level.  Pain was noted through out the record at the SIF, with limitation in movement of the cervical area and loss or limited movement of the lower extremities.  EMG in 2003 showed L5-S1 radiculopathy.  Pain medications, in addition to epidural blocks, were provided.  There was also degenerative disc disease at C3-C4, C4-C5 and C5-C6 with mild spinal stenosis secondary to circumferential disc bulge.  Plaintiff Cruz was referred to a pain clinic.  (Docket No. 23, pp. 5-6).  Plaintiff also complained of knee pain with sensory deficit.  He was diagnosed with inflammatory action or synovitis secondary to obesity for the patient was 255 pounds.  Pain medications for the knee condition were also prescribed. There was a diagnosis for carpal tunnel syndrome with pain in the left hand.  The patient was treated with physical therapy, acupuncture and infiltrations for the shoulders, back and hand.  He was also subjected to surgery for release of the carpal tunnel syndrome which decreased in July 2005 but then reappeared with swelling in December of 2005.  (*Id.*, p. 7).  The patient received the maximum number of

---

[4]  Plaintiff was represented by counsel at the administrative hearing and was allowed to propose his own questions to the vocational expert.

physical therapies without improvement and continued with pain in his hands, knee and back with loss of strength and numbness in upper extremities.  (*Id.*, pp. 7-8).

Plaintiff Cruz also received outpatient psychiatric treatment for anxiety, sleep disturbances and depressed mood.  He was prescribed medication through August 2, 2007 up to November of 2009 for his mental condition.  Previously, a consultant psychiatrist, Dr. Alberto Rodríguez-Robles (hereafter "Dr. Rodríguez-Robles"), evaluated the patient on January 12, 2005 finding him depressed with psychomotor retardation, restricted affect, and anxiety.  (*Id.*, p. 9).

Plaintiff's memorandum argues the ALJ failed to comply with proper legal standards by not providing adequate consideration to plaintiff Cruz' obesity and the functional impacts it had, except to conclude he was limited to light work with certain restrictions. The ALJ referred to the Medical-Vocational Guidelines in considering the residual functional capacity, together with age, education and work experience but thereafter indicated plaintiff could not perform all of the exertional demands of work at the determined level of light level of exertion.  Such being the case, the ALJ could only use the guideline as a framework and more so in the presence of an additional non-exertional condition which also imposed limitations.  (Docket No. 23, pp. 13, 16).  Plaintiff Cruz also objects that, in addition to the inconsistency in the ALJ's wording as to the use or not of Medical-Vocational Guideline application, same was not thereafter cured with the vocational expert's testimony for the ALJ did not pose correct hypothetical questions by omitting treating sources, objective assessments and tests insofar as pain, bilateral manipulative and mobility limitations.  (*Id.*, p. 17).

Edil Cruz v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1945 (CVR)
Page No. 10

The Commissioner objected plaintiff's arguments.   Although not specifically addressing the alleged omissions of adequate hypothetical questions to the vocational expert, the ALJ proposed the finding of the vocational expert was based on the determination that non-exertional limitations did not significantly erode plaintiff's occupational base and within the residual functional capacity for light work jobs existed in significant numbers in the national economy.   These other jobs were identified as classifier, labeler or ticketer and telephone clerk.   Adopting the vocational expert's testimony, the ALJ then applied the GRID as a framework to find plaintiff Cruz not disabled.   (*Id.*, p. 12). According to the Commissioner's memorandum of law, the medical evidence, including laboratory tests, EMG, CT and MRI, also contained a neurological evaluation by Dr. Alfredo Pérez-Canabal (hereafter "Dr. Pérez-Canabal") who observed adequate gait and full muscle strength with normal reflexes.   (*Id.*, p. 4).   A state agency consultant, Dr. Lorena Díaz, assessed that plaintiff Cruz could sit, stand and walk for about six hours each day, frequently balance and kneel and occasionally stoop, crouch, crawl and climb, without manipulative limitations.   Plaintiff Cruz needed to avoid concentrated exposure to vibrations. (*Id.*, p. 5).

Insofar as the mental condition, treating psychiatrist Dr. Carmen Cotto (hereafter "Dr. Cotto") found no difficulty to get along with relatives and neighbors. The patient's mood/affect was anxious.  Perception was normal and he was fully oriented, with preserved memory.   Attention span and concentration were satisfactory, with normal intellectual capacity, fair insight and regular judgment.   Memory was preserved.   After five medical appointments, Dr. Cotto's diagnosis was of adjustment disorder with depressed mood and

anxiety. (Docket No. 25, p. 5; Docket No. 13, Transcript pp. 490-494).        In regards to the lack of consideration of obesity raised in plaintiff's memorandum, the Commissioner submits there is no separate listing for obesity and the requirements of the Listing of Impairments would need another impairment that by itself meets said Listing or which combination also would meet the listing.  The ALJ determined Cruz' obesity did not increase the severity of other impairments to the extent that would meet the requirements of the Listing but considered its impact on plaintiff's ability to perform routine movement and necessary physical activity.  (*Id.*, pp. 13-14).  None of plaintiff's medical sources assessed any impairment that individually or in combination with obesity satisfied the requirements of the Listing.  To the contrary, Dr. Pérez-Canabal, a neurologist, found adequate gait and full muscle strength.  Dr. Samuel Méndez-Figueroa, another neurologist, also observed normal gait.  (Docket No. 13, Transcript pp. 315, 332-334).  As such, the Commissioner submits the ALJ considered obesity as a factor in the administrative decision, more so correctly since the state agency medical consultant assessed the patient could frequently balance and kneel, and occasionally stoop, crouch, crawl and climb. (Docket No. 25, p. 14).

The ALJ's opinion found that plaintiff Cruz' mental impairment did not result in marked restrictions of activities of daily living, marked difficulties in maintaining social functioning nor marked difficulties in maintaining concentration, persistence or pace or episodes of decompensation.  (Docket No. 13, Transcript p. 58).  The SIF's treatment

reported only mild restrictions in activities of daily living for plaintiff Cruz did get well with his spouse and children and could take care of his needs without help.[5]

Annotations by Dr. Ronald Malavé (hereafter "Dr. Malavé") to the contrary insofar as there being marked and extreme limitations were not supported by progress notes and were considered inconsistent with the record as a whole. The ALJ noted the progress notes signed by other doctors from the treatment center at CSCO showed no indicia that Dr. Malavé treated or even examined plaintiff Cruz but rather he seems to have signed the report while the progress notes showed the signatures of other doctors. (*Id.*).[6] The ALJ has explained, on the record, the reason why it was not affording weight to Dr. Malavé's report.[7]

As to social functioning, the ALJ found mild to moderate difficulties were established in that plaintiff Cruz expressed feeling irritable and very preoccupied over the economic situation created for being without work. As to concentration, persistence and pace, only mild difficulties were assessed on the basis of the record. There were no episodes of decompensation. (*Id.*, p. 59).

---

[5] Plaintiff Cruz' comments on these issues were to the contrary, that he could not help with household chores, could not wash the car or practice any sport. (Docket No. 13, Transcript p. 258, 259). At the neurological evaluation by Dr. Samuel Méndez-Cruz, plaintiff also averred that, even light house duties, cold weather, sudden movement, walking for more than twenty minutes and lifting more than ten pounds exacerbated his symptoms. (*Id.*, p. 331). Rivera-Torres v. Secretary of Health & Human Servs., 837 F.2d 4 (1st Cir. 1988); Rodríguez Pagán v. Secretary of Health & Human Servs., 819 F.2d 1 (1st Cir. 1987). (It is up to the Secretary, not the courts, to resolve conflicts in the medical evidence).

[6] The ALJ also noted having seen numerous reports by Dr. Malavé of similar nature in many other cases without having seen the patient although clarifying he was not stating the reports intentionally created the impression that Dr. Malavé was the treating psychiatrist but rather the ALJ was relying that these reports by Dr. Malavé were largely unsupported. (Docket No. 13, Transcript, p. 58).

[7] The ALJ's explanations as to Dr. Malavé's report delved with the remand issue by the Appeals Council to provide adequate reasons why no weight was being afforded other than seeing such reports in other cases and which considered the ALJ's comments as inappropriate. (Docket No. 13, Transcript pp. 107-108).

The Court of Appeals the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled.  Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988).  That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

On the basis of this legal precedent, the ALJ made the determination as to plaintiff Cruz' established limitations as supported by the medical record.  However, we still need to discuss whether the relevant questions were posed to the vocational expert.

The vocational expert, Dr. Marieva Puig (hereafter "Dr. Puig"), testified briefly at the administrative hearing.  Dr. Puig considered plaintiff Cruz' previous work experience of

mechanic helper as semi-skilled.  The construction laborer was non-skilled job.  Both were of heavy level of exertion, as was garden worker.  The job of machine operator, unskilled work, was of medium level of exertion.  (Docket No. 13, pp. 763-764).

Dr. Puig  indicated an individual such as plaintiff Cruz could not perform above jobs for these demanded some physical effort that exceeded light level of exertion.  The ALJ submitted that plaintiff's limitations were to lift twenty pounds occasionally and ten pounds frequently, stand, sit or walk for six hours in an eight hour workday, push and pull no more than twenty-five pounds with his arms, frequently maintain his equilibrium and kneel and occasionally climb stairs and ramps.  The mental limitation was none, except for simple instructions consonant with unskilled work.  (*Id.*, p. 764). *See* Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994) (remanding for further proceedings because the ALJ did not ask the vocational expert proper questions about non-exertional limitations); *see, e.g.*, Arocho v. Secretary of HHS, 670 F.2d 374, 375 (1st Cir.1982).

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the

courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[8] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

In addition to the ALJ's consideration of Dr. Malavé's report and the reasons provided for not giving weight to such treating source, the progress notes as to plaintiff Cruz' mental condition show a report by Dr. Rodríguez-Robles, consultant psychiatrist, which refers to good relations with his spouse and children. The patient appeared at the interview depressed and with psychomotor retardation. Affect was restricted and mood depressed. The trend of thought was slow, logical, coherent and relevant. He has average intellectual capacity without perceptual disorders. Attention and concentration were diminished and he was easily distracted, being unable to follow the sequence of months

---

[8] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

Edil Cruz v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1945 (CVR)
Page No. 16

backwards.  Insight was fair and judgment was adequate.  The diagnosis was 296.23.[9]  He was found unable to manage his own funds.  (Docket No. 13, Transcript p. 343-347).  The ALJ afforded only some weight to Dr. Rodríguez-Robles' report.  (*Id.*, p. 27).

The objective medical evidence as to exertional conditions revealed the presence of active bilateral radiculopathy more severe to the left side.  The notes indicated HNP L5-S1 with radiating pain to the right leg and numbness.   There is bulge at L4-L5 and upon receipt of physical therapy pain and numbness had continued.  (Docket No. 13, Transcript pp. 274-275,  583, 585, 587 ).  The knee pain and treatment was a result of inflammatory action or synovitis secondary to overweight.  The patient was noted as obese and walking with difficulty.  On previous occasion, the patient was observed to walk normally with normal posture.  (*Id.*, pp. 298, 589, 603). The complaints of cervical pain results from C3-4 and C5-6 degenerative disk disease and C5-6 spinal canal stenosis secondary to circumferential disk bulge.  (*Id.*, p. 300).  The lumbosacral pain results from decreased intervertebral disc height at L5-S1 found consistent by X-ray with degenerative disc disease.  (*Id.*, p. 321).  MRI of the lumbosacral spine in 2003 showed disk space narrowing and disk desiccation.  (*Id.*, p. 576).

Even after plaintiff Cruz' insured period expired by December 31, 2007, he continued receiving treatment for his conditions through the public health system during 2008 and 2009, including emergency room visits.  (Docket No. 13, pp. 631-639, 643-646, 651-658,

---

[9]  Major Depressive Disorder, Single Episode, Severe Without Psychotic Episodes.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) published by the American Psychiatric Association.

681-688, 716-741).   Still, impairment that became disabling after the insured period has expired are of no much value for the issue is whether or not the claimant became incapacitated as of the date his insured period expires.  Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 140 n. 3 (1st Cir. 1987).  *See* Cruz Rivera v. Secretary of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (claimant is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status); Deblois v. Secretary of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982 (claimant must show that her impairments reached a disabling level of severity by date her insured period).

The ALJ is required to consider pain as a disabling condition.  The opinion refers to evidence on the record of low back pain as far back as 2001 but plaintiff Cruz continued working up to 2002.   (Docket No. 13, Transcript p. 24).  Objective medical evidence by magnetic resonance imaging in 2002 and 2003 revealed annular disc bulge at L4-L5 and annular disc bulge and disc protrusion with mild narrowing of both neural foramina at L5-S1.  An EMG showed L5-S1 radiculopathy, more severe to the right.  (*Id.*, pp. 24-25). Similar examinations of the cervical area found degenerative disc disease C3-C4 and C4-C5 levels and at C5-C6 mild spinal stenosis secondary to circumferential disc bulge.  Notes from the SIF reveal that, at times, plaintiff Cruz would indicate he was feeling much better, having no side effects of medication.

The ALJ concluded that medically determinable impairments were expected to cause the alleged symptoms but the intensity, persistence and limiting effects of the symptoms,

[presumably pain] were not credible to the extent they were inconsistent with residual functional capacity assessment.   (Docket No. 13, Transcript, p. 26).  Insofar as pain, the ALJ did not have the benefit of plaintiff Cruz' testimony at the administrative hearing to anchor his credibility determination.[10]  There was, however, medical record and objective tests and examinations showing the existence of several conditions that could produce the pain alleged.  The objective medical record of plaintiff's conditions, in combination, and the consistent pain being treated, as well as some contradictions in the medical evidence as to the back condition support the ALJ's credibility assessment.

In dealing with pain, <u>Avery</u> factors require an ALJ to consider same when there are clinically determinable medical impairments that can reasonably be expected to produce the pain alleged.  *See* <u>Avery v. Secretary of Health & Human Servs.</u>, 797 F.2d 19, 21 (1st Cir. 1986).[11]   Pain may be a non-exertional factor to be considered in combination with exertional limitations, even though it may also serve as a separate and independent ground for disability.  <u>Gagnon v. Secretary of Health & Human Servs.</u>, 666 F.2d 662, 666 n. 8 (1st Cir. 1981) ; *see* <u>Da Rosa v. Secretary of Health & Human Servs.</u>, 803 F.2d 24, 25-26 (1st Cir.

---

[10]   The ALJ is not required to address in the opinion every factor enumerated in <u>Avery</u>.  <u>Avery</u> requirements are complied with when the ALJ questions a claimant about the physical condition and daily activities.  *See* <u>Frustaglia v. Secretary of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987) (the ALJ thoroughly questioned claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain in conformity with the guidelines in Avery regarding the evaluation of subjective symptoms); <u>Vega v. Astrue</u>, 2012 WL 5989712 (D. Mass., 2012) (citing <u>Patilla v. Shalala</u>, 21 F.3d 419-420 (1st Cir. 1994) (unpublished table decision) (upholding a district court's affirmance of a denial of benefits where the hearing officer "complied with the requirements of Avery" by "question[ing] [the claimant] about her physical condition and her daily activities," and by supporting his credibility determination with substantial evidence) .

[11]   The Social Security Act requires that "there must be medical signs and findings, established by medically acceptable clinical or laboratory techniques, which show the existence of a medical impairment ... which could reasonably be expected to produce the pain ... alleged".  42 U.S.C. §423(d)(5).

1986). Upon a showing by plaintiff as to determinable medical impairment that can reasonably be expected to produce pain, the ALJ is not free to discount pain complaints by simply alleging the severity is not corroborated. To the contrary, when considered with all the evidence – including statements of the individual and/or his/her physicians as to the intensity and persistence of pain– which may reasonably be accepted as consistent with the medical signs and findings, the conclusion leads to having the individual under disability. 42 U.S.C. 423 *et seq.*

The record herein shows plaintiff Cruz underwent the full allowable physical therapy, infiltration and epidural block for his neck, hands and back pain condition. Pain in the hands is classified as intense with moderate edema and numbness. (Docket No. 13, Transcript, pp. 498, 500, 506). On April 22, 2005, he underwent surgery to correct carpal tunnel syndrome and ensuing pain but the condition reappeared afterwards. (Docket No. 13, Transcript, pp. 422-427, 710). He was also prescribed pain medications. The ALJ found that plaintiff had a medical condition that reasonably could be expected to cause some discomfort and pain, but not to the extent alleged. Plaintiff Cruz did not appear at the administrative hearing before the ALJ, leaving void the opportunity to explain and demonstrate the functional impact of pain. The record contains a residual functional capacity assessment which noted that they had taken plaintiff's allegations of pain, insofar as back and neck tenderness into account. (Docket No. 13, Transcript pp. 324-330, Dr.

Lorena Díaz Trancón, Internist).[12] Although an ALJ cannot draw his own conclusions about a claimant's functional capacity from raw medical data, he/she may rely on the residual functional capacity assessment of non-examining consultants even when treating physicians expressed contrary opinions. Berríos López v. Secretary of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).

Under the Social Security Act a reviewing court must uphold the factual findings of the Commissioner if these are supported by substantial evidence and were reached through application of the correct legal standard, as in this case. The substantial evidence rule is far more deferential than *de novo*: it consist of more than a mere scintilla of evidence but may be somewhat less than a preponderance.[13]

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considering there was substantial evidence in support of the decision rendered by the Commissioner, concludes that the Commissioner's decision is to be AFFIRMED.

---

[12] Dr. Miguel A. Pérez-Bonilla, a generalist,  noted he was not qualified to make the assessment. (*Id.*, pp. 617-618).

[13] Unlike all prior levels of review, which are de novo, a district court is required to treat findings of fact [of the Commissioner] as conclusive if supported by substantial evidence. Mathews v. Eldridge, 424 U.S. 319, 339 n. 21, 96 S.Ct. 893, 905 n. 21 (1976).

Edil Cruz v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1945 (CVR)
Page No. 21

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 14th day of February of 2013.

> S/CAMILLE L. VELEZ-RIVE
> CAMILLE L. VELEZ RIVE
> UNITED STATES MAGISTRATE JUDGE